The next matter is Case No. 15-2299, Christopher Heien v. Archstone. What does this say here? I can't read his handwriting. Sorry. Thank you. Mr. Foy, good morning. Good morning, Your Honor. This is an appeal on an attorney's fee award on a class action from the district court. Judge Young, in this particular settlement agreement, the parties created a common fund of $1.3 million. The plaintiffs requested attorney's fees of 33%. Under the settlement agreement, the defendants agreed that they would not object to a fee of less than 15% of the common fund. So in effect, the district court was asked to establish a number somewhere between 15% of the common fund and 33% and a third percent of the common fund. The district court chose 2.5% of the common fund as the amount to award. To put this in some sort of context, Judge Dominguez in the District of Puerto Rico in 2011 wrote a decision called In Re Puerto Rican Cavatage Antitrust Litigation. And he canvassed the fee awards in the First Circuit under the percentage of the fund method. He went specifically looking for the smallest awards he could find. He found one of 10%, he found one of 14.5%, he found one of 17.5%, and all the others were 20% or above. In those cases, however, did he also match that up against the load store? I do not think that in the... He was canvassing published cases, so he wasn't actually... To the extent the judges would have done that, then they would have done that to the extent they didn't. But that wasn't part of his analysis? That wasn't part of his analysis, no. But I think the point is that when, in this circuit, it's well established that the common fund, when there is a common fund established, particularly by a settlement agreement which contemplates a percentage payment, then the court typically uses something between 20 and 30%. Here, the number established was 15 to 33 and a third percent. And this drastic and dramatic deviation from the settlement agreement, from the established parameters that the parties set, we submit was clear error. Is the district court allowed to use its discretion using a variety of factors which include the amount of time expended, complexity of the legal and factual issues, the quality of the attorney's services, and the amount of damages and results secured? And I'm quoting from Starfin's case of this circuit. Absolutely, Your Honor. Isn't that what the district court did here? I think what the district court did, though, was that it established a number which so dramatically deviates from any of these possible considerations. Well, here, basically, this case had been pretty well worked over in the prior case. I forget the name of it. Hermita, Your Honor. Yes. And there was no discovery. That's correct. And I think it was the same attorneys in both cases. That's correct, Your Honor. I would also add that this case was originally part of Hermita. What happened is that, basically, there was an attempt to establish a class that consisted of all of the Archstone properties. And all of them had amenity fees. And all of these amenity fees were violations of Massachusetts law. Each was owned by a separate LLC, each one of these properties. They were all managed by Archstone, so it was essentially the equivalent of the taxicab company where every medallion is in a different corporation. Judge Young said, no, you can only do this one at a time. Each LLC, you have to write your own 93 demand letter. You need to have a class representative. And so this case was forcibly split off by the judge's decision. My point that I'm trying to discuss is, why is this an abuse of discretion when the judge took all these points that are relevant into consideration? I mean, considering that the rule is that district court's decision of attorney's fees is entitled to a lot of difference. Again, Your Honor, for two reasons. First of all, it's an abuse of discretion because the parties themselves stipulated to 15% as a floor. That was the basis for the settlement. And if you're going to encourage settlements of class actions, and if you are going to not waste scarce judicial resources by litigating cases that don't need to be litigated so the attorneys can later claim larger fees. Do you think that even where the parties have come to such an agreement that the court should not exercise its independent judgment? Because essentially in these cases, what the district judge is required to do is to ensure that the funds that are available are properly allocated. So are you suggesting that if the parties make a decision amongst themselves that it's going to be somewhere between these two numbers, that the district judge should not take a look at that? No, not at all, Your Honor. Of course he must. But if it is within the range of reason, and again, there is only one prior case in this entire circuit that I can find or that Judge Dominguez could find, and as far as I know that anyone has been able to find, in which less than 14.5% was awarded, and that's of 10%. And this one is by a factor of almost five times smaller than that. The point about class actions is not that they necessarily require. We don't measure their value by the amount of work that the attorneys do. We measure their value by the results that the attorneys achieve. That's the primary basis for it. And when you begin to return to the lodestar method, where you say, well, we're going to look at what attorneys, how much work they put into the case, and by the way, I neglected to ask if I could reserve two minutes at the end for rebuttal. Sure. Is it too late? When you begin to do that, then you are not only upsetting settled law, but also the policy behind the settled law. The policy behind the settled law is we are going to look at the benefit that the attorneys create and not the work that they do. First, because it's a simpler, easier, better way to do it. And secondly, because it encourages settlements and it adequately awards attorneys for the results they achieve, for the clients, and not simply for how much they can build a case. I also would point out that if this was a lodestar award, it is fairly shocking, because the bills which were submitted so that the court could do a lodestar cross-check, which is what courts often do when they award a percentage of the fund, the idea is to ensure that there is some reasonable relationship between the two numbers, showed over $60,000 in legal fees in their brief. The appellees suggested that no more than $43,000 should be done. This was only $29,000. And there was no statement of anything on the record by the judge to indicate that he used the lodestar or to say why he reduced it beyond the fairly minimal fees that were accepted. Just at the limits, I understand the argument that even if this was a permissible, non-abusive discretion of the lodestar calculation, roughly speaking 50% of the lodestar requested fees, even if all of that was correct, it was an abusive discretion to use that method? Yes. And do we have any case that has ever held that? You have, I think, the cases, all of them collectively state that the common fund is the preferred method. No, I understand that, but I guess it's just Judge Meese's question, which is if I heard you right in answering her, you were saying those cases didn't address whether the judge was attempting to use the lodestar method or was using it in a non-abusive way. So what it sounds like you're asking us to do here is a step further than those cases, which is to say because the absolute number here using a non-lodestar amount would be an abusive discretion. It's an abusive discretion even if that number could be defended under the lodestar method. And even if using that lodestar method on its own would not have been an abusive discretion because somehow you're just not allowed to use that method in this circumstance when you come this low an absolute amount. I think it's the latter, Your Honor. And I guess that sometimes leads to any authority that takes away the district court discretion to use that alternative approach to setting fees. No, but I think all of the cases collectively all stand for this proposition that the lodestar and the percentage of the fund method are both means to accomplish an end, and the end to be accomplished is a fair and reasonable attorney's fee. And when you have one system, let's say the lodestar produces a $29,000 fee, a 15% fee given the common fund would have been $185,000. When I was a kid I used to go to the carnival and you'd pick a duck out of the pond and if it was a nine you'd get a big stuffed animal and if it was a one you'd get one of those little things that you'd put your fingers in and you couldn't get it out. That's not the way the law is supposed to work. Here's the lodestar, you get $29,000. Here's the percentage of the fund, you get $185,000. That posits that the abusive discretion standard looks to whether a decision is idiosyncratic or variable or capricious. And I think what you're positing is that there's arbitrariness and capriciousness built into the law, that you can choose the lodestar and you get the $29,000 or you can choose the percentage of the fund method and you get something over $200,000. I don't think that's the way the law is intended to operate, certainly not in the context of a settlement agreement where the parties have agreed. And part of the consideration for that agreement was not appealing the other fee. Are you going to use your reserve time now? No, I didn't mean to do that. I meant to be answering Judge Warren's question. I'm sorry, Your Honor. Mr. White, good morning. Good morning. May it please the Court, my name is Craig White. I represent the Appalachians. I'd like to begin my comments this morning by correcting a bit of a misstatement in the facts of the case. It was indicated in the appellant's argument that we stipulated to a fee of $195,000 in the settlement agreement. That's not the case. What the settlement agreement says is that we will not object to a fee that is $195,000 or less. That, in effect, is a waiver of our right to appeal a judge's decision that is anything below $195,000. It is not a stipulation, and there is no stipulation, regarding the proper fee in this case. As a matter of fact, that's why the fee issue had to be resolved by the district court. The parties could not reach an agreement. We could not reach an agreement because, frankly, the appellants made it clear that they were going to seek 33 percent of the estimated value of this settlement, and we felt that was too high. And because it wasn't one of those issues that you let a settlement agreement go down the drain over, we simply agreed to disagree and leave it to the district court. Those are the facts in terms of what was agreed to. Now, in terms of what's important, what's important here is the simple question of whether $29,250 is a reasonable fee for the legal services delivered in this case. We respectfully submit it is. The case is unusual, but it is unusual because there is so little to it. The useful life of this lawsuit was approximately 16 weeks. It was filed in mid-June and stayed in mid-August, about eight weeks. The stay remained in effect until the settlement papers were filed. The settlement talks began in mid-September and were concluded with a settlement agreement dated November 13, an additional eight weeks. It is rare that you have cases that last and have a useful life of only 16 weeks. It is even rarer that during those 16 weeks, nothing happens. The record in this case shows that there was a complaint filed, there were answers filed, and there was a settlement. That's it. Nothing more. No court appearances, no discovery, nothing. In part because of the stay, of course, but it is still a reflection of what was going on in the case. The reason for this unusual case, as has been alluded to already this morning, is the existence of the Hermida case. The Hermida case is the case that carried the water. That case resolved the legal issues. In this case, it was the reason for the stay. In this case, and frankly, it was the reason for the settlement. Because the Hermida case was ongoing simultaneously, and because it was a complete knockoff of Hermida, those factors explain why nothing was done. So in a case that is this unusual, is $29,250 a reasonable fee? In analyzing that question, one must consider there were three law firms involved for the plaintiffs. Those three law firms assigned three partners and one associate to the case. Those law firms, in the time period between the filing of the complaint and the stay, devoted 15 hours to the case. More than 40 of the total 170 hours, the total of the entire road start in the case, were incurred while the defendants were still being sued in Hermida. In other words, before the summary judgment in Hermida was granted and these defendants were dismissed from that case. Another approximately 40 hours, according to the lodestar, were devoted to two law firms negotiating the settlement. That is the sum of the breakdown of the fees. In order to determine whether or not the lodestar amount requested in this case, or I should withdraw that, was not requested. As a matter of fact, the lodestar wasn't even mentioned in the petition for attorney's fees, except to say the lodestar is not enough money. There was no explanation for why it wasn't enough money. It was simply stated in the petition the lodestar is not enough. But the teaching of Hermida and the attorney fee award in that case to the same lawyers by the same judge, teaches us that the lawyers involved here and their lodestar were criticized and had the lodestar reduced in Hermida for block billing, which was certainly true of the invoices submitted in support of the fee petition in this case, and a reduction was imposed. That's why in Hermida was imposed for lawyers doing what were characterized as administrative tasks. Same lawyers, same staffing as in this case. In Hermida there was criticism for billing for travel time. Frankly, I don't remember if there was travel time in that case. Does your argument depend on us concluding that what the judge did was apply the lodestar method and then cut it in half? No, it does not depend on that. Okay, if it doesn't, it depends on that. It depends upon the conclusion that $29,250 is a reasonable fee. But I guess what I'm thinking about that is that's got to be with reference to some known method for coming to that amount, right? Yes. Okay, so if it's not the lodestar method that the judge used, your argument would be if you use the percentage of the amount approach, that even if it's at 2.5% that that's fine for a case like this? Yes. What would be the precedent that would support that conclusion? There is no common fund class action settlement case where the amount involved was this small, a $1.3 million value fund, where the percentage of fund fee award was below 5%. I'm not aware of that case. So why is that not a potential problem for you if we don't decide that what the judge must have done was apply the lodestar method, which is a known method, and then apply it reasonably? Because the precedent in this circuit permits a district court judge to apply a lodestar or a percentage of fund analysis to a fee award in a common fund case. In other words, it is the court's discretion as to the path they take to arrive at the reasonable and fair fee. Let me put it a different way. It's one thing if a judge applies a lodestar method and goes through the calculation and explains themselves, and then you can say, well, that makes sense just as all the arguments you're making here as to why. And I'm not saying we can't read the district court to have done that implicitly. Maybe we can. But alternatively, if the district court doesn't do that and the district court just says, I say 29,000, period, that seems a little harder for us to review and say that's reasonable if there's no analysis of why that was a good conclusion under the lodestar method. And all that we have is that it looks like it's the lowest amount ever given under the percentage of the fund approach. That, you get the difficulty? I get the difficulty. So how are we supposed to think about this case, then? The district court here gave explicit reasons for the $29,250 award. It was asked to and it did on the motion for clarification. What the district court did not do is math. There is no, and I'm going to tell you, this is how I did the mathematics to arrive at $29,250. If this court requires math, then there's a problem in the case. But math has never really been a requirement. Explanation, yes, but that's here. Math, not so much. But there's no question. The math is not here. Even though the 50% of the lodestar figure fits more nicely than anything else. Thank you. Thank you, Counsel. Three quick points, Your Honors, if I may. The first is that if you look at the opposition, which my brother filed in the lower court, you will see that at no time do they ever urge the judge to use the lodestar method or say that the lodestar is preferable or suggest to him that the settlement agreement permits it. The most they ever say is on page four where they say the court can validate the award through the lodestar method and that would show that a 15% is reasonable. That's the most they ever say. That, I think, is persuasive evidence of the intent of the parties in entering into the settlement agreement. Number two, the judge's decision, if it were done under the lodestar method, would have required at least some explanation for why he brought the numbers down. The only explanation that's on the record anywhere, at the fairness hearing, the written, anywhere, is the judge is dissatisfied with the amount of claims that have been filed. He wrote a decision in a case called In Re Relevant in which he announced that in the future he was going to give class action awards not based on the size of the common fund but on the number of persons who actually applied to the fund and got money from it, which is contrary to the law of the circuit. There is no reason to believe that he did not do that in this case because he specifically says he looked at the benefit received by the parties. And if you look at the percentage of the claims, the fee awarded works out to 16.5% of the claims, a very reasonable percentage if you're going to use the percentage of the fund. On the low side, to be sure, but I think within the range of discretion that we can see in Judge Dominguez's decision, which, by the way, is all about cases which settle before trial and with little or no substantial discovery. So those numbers I gave you, 10%, 14.5%, 17.5%, those are all in cases like this one in which there was almost no discovery. My time is up. Thank you so much.